VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.        22-AP-318

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2023

| | |
|---|---|
| In re Z.R., Juvenile | } APPEALED FROM: |
| (C.B., Mother\*) | } |
| | } Superior Court, Bennington Unit, |
| | } Family Division |
| | } CASE NO. 120-7-19 Bnjv |
| | Trial Judge: Howard A. Kalfus |

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights to her six-year-old daughter Z.R. We affirm.

Z.R. was born in October 2016.  In July 2019, the family division issued an emergency care order transferring custody of Z.R. to the Department for Children and Families (DCF) after police discovered several bags of heroin, approximately fifty needles, some crack pipes, and other drug paraphernalia in the family home while executing a search warrant for stolen property.  Both of Z.R.'s parents were active drug users and mother had recently tested positive for fentanyl, opiates, and cocaine.

The State filed a petition alleging Z.R. was a child in need of care or supervision.  In October 2019, parents stipulated to the merits of the petition.  In December 2019, the court established a permanency goal of reunification with mother within nine months.  The disposition case plan called for mother to maintain sobriety, engage in substance-abuse and mental-health treatment, maintain safe and stable housing for her and Z.R., complete a parenting program, and avoid people that might trigger her substance abuse, among other requirements.

After father's parentage was established, in January 2021 the case plan goal was modified to reunification with mother or father by April 2021.  During this time, according to a subsequent case plan that was admitted into evidence at the termination hearing, mother continued to test positive for opiates and opioids, did not engage in mental-health treatment, missed appointments with her probation officer and DCF worker, and was terminated from Family Time Coaching due to her lack of engagement.  In March 2021, mother was arrested and charged with various drug-related crimes.

DCF filed petitions to terminate both parents' rights in May 2021.  A final one-day hearing was held in October 2022.  Mother did not appear for the hearing.  Mother's attorney requested that the court postpone the hearing, which the other parties opposed.  The court

recessed for an hour so that mother's attorney could attempt to contact mother, but he was unable to do so. The court then denied the motion for a continuance but stated that mother could file a motion to reopen the evidence for good cause.

After the State and father presented their witnesses, the court issued its findings and decision orally. The court found that mother's progress with respect to the case plan goals was "spotty at best." Mother was incarcerated until May 2022, when she was released to a residential substance-abuse treatment program. She had been doing well there until she left the program in October 2022. There was a possibility that she could be reincarcerated as a result of her decision to leave the program. She did not consistently engage in substance-abuse treatment during the case. She did not have any in-person contact with Z.R. from March 2021 to October 2022, and her visitation prior to that was inconsistent.

The court found that both parents had stagnated in their progress. Mother had only had one in-person contact with Z.R. for the previous sixteen months and her whereabouts were unknown. The court also found that she had made "very insufficient progress with respect to each of the action steps" in the case plan, except that she had signed releases for DCF. Father had been incarcerated since early 2021 and would continue to be in jail for six more months, and continued to struggle with substance abuse.

The court then assessed the best-interests factors. It found that Z.R. had a loving relationship with both parents but that her interactions with them had been extremely limited. She was well-adjusted to the home of her maternal grandparents, who acted as her foster parents, and their community. The court found that neither father nor mother would be able to resume a parental role within a reasonable time. It noted that mother had made very little progress since the case began in 2019 and found it unlikely that she would make significant progress in the coming months. Finally, it concluded that neither parent was playing a constructive role in Z.R.'s life. It therefore granted the petitions to terminate both parents' rights. Mother appealed; father did not.

Mother first claims that the family division deprived her of due process when it denied her attorney's motion to continue the termination hearing after she failed to appear. The trial court has discretion in deciding whether to grant a motion to continue. In re D.H., 2017 VT 71, ¶ 11, 205 Vt. 281. We will uphold the court's decision unless it appears that the court failed to exercise its discretion or did so "for reasons clearly untenable or to an extent clearly unreasonable." State v. Ahearn, 137 Vt. 253, 267 (1979).

Mother has failed to demonstrate that the court abused its discretion here. The record shows that the termination hearing had already been delayed for five months due to mother's belated disclosure that she might have Indian heritage. After it was determined that she did not, the court rescheduled the matter for October 27, 2022. When mother failed to appear at the beginning of the hearing, the court granted a one-hour recess so that mother's attorney could attempt to locate mother. When he failed to do so, the court decided to proceed with the hearing, giving mother leave to reopen if she could establish good cause for her absence. At the time of the hearing, mother had stopped participating in the case plan. She never offered a reason for her absence. Nor did she subsequently ask the court to reopen the evidence or explain what evidence she would have offered had she been present. Under these circumstances, we conclude there was no abuse of discretion in the court's denial of the motion to continue. Cf. In re D.H., 2017 VT 71, ¶ 12 (concluding court abused its discretion in denying mother's requested thirty-minute continuance where granting request would not have prejudiced other parties, mother was

prevented from presenting important evidence, and mother had actively participated in case and case plan).

Nor did the court's decision deprive mother of her right to due process. Mother "was entitled to reasonable notice of what was in issue and an opportunity to be heard" on that issue. Brown v. Brown, 154 Vt. 625, 629 (1990); see also In re C.L.S., 2020 VT 1, ¶ 25, 211 Vt. 344 ("[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation omitted)). The court sent notice of the October 2022 termination-of-parental-rights hearing to mother in July. The notice warned that mother's failure to appear at the hearing would cause the court to consider the evidence and could result in an immediate order terminating her parental rights. Mother does not claim that the notice was not sent directly to her or that she did not receive it. There is no evidence that the notice was returned. Mother had the opportunity to appear and be heard regarding the petition. She simply failed to avail herself of that opportunity. We therefore decline to disturb the termination decision on this basis. See In re S.W., 2008 VT 38, ¶ 12, 183 Vt. 610 (mem.) (declining to reverse termination order due to mother's absence from last day of termination hearing where notices were to mother's last known address and not returned, court staff attempted to reach mother by telephone, and court gave mother opportunity to reopen evidence if she provided adequate reason for absence); In re J.L., 2007 VT 32, ¶ 13, 181 Vt. 615 (mem.) (holding father's due-process rights not violated by court sending notice of termination hearing to father's attorney after initial notice to father was returned and father failed to update address).

Mother alternatively contends that the decision below must be reversed because the evidence did not support the court's finding that mother had stagnated in her progress toward reunification. When termination of parental rights is sought after initial disposition, the court must engage in a two-step analysis: it must first determine whether there has been a change in circumstances justifying modification of the original disposition order, and if so, it must consider whether termination is in the child's best interests. In re B.W., 162 Vt. 287, 291 (1994). A change in circumstances "is most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." Id. (quotation omitted). "The key question for the court when considering whether stagnation has occurred is whether the parent has made progress in ameliorating the conditions that led to state intervention." In re T.M., 2016 VT 23, ¶ 12, 201 Vt. 358 (quotation omitted).

There was ample evidence to support the court's finding of stagnation here. As the court found, by the time of the hearing, except for a single visit two weeks prior to the hearing, mother had not seen Z.R. in person for sixteen months, or nearly one-quarter of her life. Mother had left her substance-abuse treatment program and her whereabouts were unknown. These facts alone were sufficient to demonstrate that mother had stalled in her progress toward improving the conditions that led to Z.R. entering custody and that she was far from being able to care for Z.R. on a full-time basis. Mother does not challenge these findings, instead arguing that the court should have placed more weight on the evidence of her sobriety and the positive visits she had with Z.R. earlier in the case. However, "the mere fact that a parent has shown some progress in some aspects of his or her life does not preclude a finding of" stagnation. In re A.F., 160 Vt. 175, 181 (1993). The court acknowledged the evidence of mother's recent sobriety, which coincided with her incarceration and release to a treatment facility, and that Z.R. enjoyed her visits with mother when they occurred. However, it found that her engagement in substance-abuse treatment and her visitation with Z.R. had been inconsistent throughout the case, and concluded that she had made insufficient progress toward addressing the issues that led Z.R. to enter state custody. The court's findings are supported by the record, including testimony by the

3

Family Time coach and DCF social worker that from January 2020 to March 2021, mother continued to struggle with substance abuse, was not engaged in treatment, attended only fifty out of eighty visits with Z.R., gave inadequate explanations for her absences, and was never able to have unsupervised visitation due to her ongoing drug use.  The court's assessment of this and the other evidence regarding mother's progress fell within its discretion.  See id. at 178 ("We leave it to the sound discretion of the family court to determine the credibility of the witnesses and to weigh the evidence.").

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

William D. Cohen, Associate Justice